# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| NATHAN TILLMAN, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:19-cv-00749-AMM-HNJ |
| DOCTOR RODDAM, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

The magistrate judge filed a report on July 23, 2020, recommending the court grant defendants Roddam's and Butler's motions for summary judgment and dismiss the complaint with prejudice. Doc. 32. On August 14, 2020, the plaintiff filed objections to the magistrate judge's report and recommendation. Doc. 35. The court considers each objection in turn.

First, the plaintiff objects to the magistrate judge's findings that the plaintiff returned to his housing area on November 18, 2017, at 5:17 a.m., after stating his pain was under control. Doc. 35 at 2-4. Although the plaintiff alleges he did not report that his pain was under control after medical staff administered Tylenol 3 to him at 4:56 a.m. on November 18, 2017, he does not dispute informing medical staff that he felt better. Doc. 35 at 4; Doc. 20-2 at 8. Whether the plaintiff returned to his housing area shortly thereafter at 5:17 a.m., as the medical record suggests, or

remained in the HCU, as other evidence suggests, is not a material fact. A material fact is a "legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Whether the plaintiff returned to his housing area after he received medical care in the HCU for the brief period of time that is in dispute – mere hours before he was transferred to a hospital for additional medical care – does not affect the magistrate judge's conclusion that the medical staff at the prison were not deliberately indifferent to the plaintiff's serious medical need. Doc. 20-2 at 8.

Second, the plaintiff argues that prison medical staff did not administer any additional treatment to him between 5:17 a.m., and the time he was transported to UAB at approximately 12:30 p.m. Doc. 35 at 6-7. However, he does not dispute that after medical staff administered Tylenol 3 to him about 4:56 a.m., he did not report pain again until approximately 12:30 p.m. when defendant Roddam ordered prison staff to transfer the plaintiff to UAB Hospital for evaluation. Doc. 20-2 at 8-11; Doc. 20-1, Roddam Decl. at 6. Additionally, the plaintiff does not provide any "verifying medical evidence" that the alleged lack of further medical care between 5:17 a.m. and approximately 12:30 p.m. was detrimental to the outcome of his injury. *See Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002).

Third, the plaintiff alleges defendant Roddam "has an unwritten practice of telling nurses not to call him unless [an] inmate is dying." Doc. 35 at 1. This assertion is conclusory and unsupported by any evidence. "[C]onclusory allegations without specific supporting facts have no probative value." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

Fourth, the plaintiff asserts that defendant Roddam "knew Plaintiff had a serious medical condition" when Nurse Raley contacted him about the plaintiff's leg injury on the evening of November 17, 2017, Doc. 35 at 5, and that Roddam was aware at that time that the plaintiff "required emergency medical treatment," but refused to refer him to a hospital, Doc. 35 at 6. These assertions also are conclusory and not based on any evidence. Additionally, a difference of opinion between an inmate and the institution's medical staff about the inmate's diagnosis and course of treatment does not give rise to a cause of action under the Eighth Amendment. *See Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976); *see also Estelle v. Gamble*, 429 U.S. 97, 106-08 (1976). Even if there is more than a mere difference of opinion, and a medical provider at a prison commits medical malpractice, that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Viewed in the light most favorable to the plaintiff, the evidence establishes that the defendants were not deliberately indifferent to his serious medical needs and

did not intentionally delay his medical treatment. There is no medical evidence that the defendants had subjective knowledge of, and disregarded, a risk of serious harm to the plaintiff due to his injured leg and refused to treat him. Rather, undisputed evidence in the record demonstrates that prison medical staff notified defendant Roddam of the plaintiff's injury and Roddam promptly ordered a course of treatment for the plaintiff, which treatment included pain relievers, ice, and scheduling an appointment for an x-ray of his upper right thigh the next time the x-ray technician visited. Doc. 20-1, Roddam Decl. at 4; Doc. 20-2 at 7. Further, undisputed evidence establishes that when the plaintiff's pain continued, Roddam promptly escalated the course of treatment by discontinuing Tylenol and Advil and prescribing the plaintiff Tylenol 3, which is a stronger pain medication. Doc. 20-1, Roddam Decl. at 5; Doc. 20-2 at 8. Following that escalation, the undisputed evidence is that the plaintiff reported to the nursing staff that he was feeling better. Doc. 20-2 at 8. The plaintiff later complained of pain again, and again the undisputed evidence establishes that Roddam escalated the course of treatment: Roddam then ordered prison staff to transfer the plaintiff to UAB Hospital for further evaluation. Doc. 20-1, Roddam Decl. at 6; Doc. 20-2 at 9-11.

    Lastly, the plaintiff restates his position that he lost the use of his leg for more than two years and suffered permanent damage to his leg as a result of the defendants' alleged delay in treating his injury. Doc. 35 at 4. However, the plaintiff

4

has failed to place any "verifying medical evidence in the record to establish the detrimental effect" of the delay in transferring him to UAB Hospital to warrant relief on his claim.[1] *See Hill*, 40 F.3d at 1188.

Having carefully reviewed and considered *de novo* all the materials in the court file, including the report and recommendation and the objections thereto, the court **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. Accordingly, the court grants defendants Roddam's and Butler's motions for summary judgment. A final judgment will be entered.

**DONE** and **ORDERED** this 28th day of September, 2020.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE

---

[1] The plaintiff claims he was required to undergo a fasciotomy and skin graft to "cure" his leg injury due to the defendants' delay. Doc. 35 at 4. But he does not offer any verifying medical evidence to that effect, and he does not address defendant Roddam's assertion that a fasciotomy or "surgical decompression would have been necessary to prevent further injury to his tissues regardless of the number of hours he was seen after his injury and subsequent skin grafts to cover the fasciotomy wound." Doc. 20-1, Roddam Decl. at 7.